<u>Not for Publication</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BELL CONTAINER CORP., <br><br> *Plaintiff,* <br><br> v. <br><br> PALAGONIA BAKERY CO. INC., PALAGONIA BAKERY PRODUCT DISTRIBUTION, INC., JOE PALAGONIA, CHRIS PALAGONIA, and 538 JUNIUS STREET CORP., <br><br> *Defendants*. | Civil Action No. 19-cv-6545 <br><br> **OPINION** |

<u>**John Michael Vazquez, U.S.D.J.**</u>

  This matter comes before the Court on Plaintiff's motion for summary judgment on Counts IV (Fraud), V (Fraud and Aiding and Abetting Fraud), VI (Fraudulent Conveyance), and VIII (Alter Ego/Piercing the Corporate Veil) of the Amended Complaint. D.E. 132. The Court reviewed the parties' submissions[1] in support and in opposition and decided the motions without

---

[1] Plaintiff's brief in support of its motion for summary judgment, D.E. 132-1 ("Br."); the opposition brief filed by Defendants Chris Palagonia and 538 Junius Street Corp., D.E. 139-1 ("CP and 538 Junius Opp."); the opposition brief filed by Defendant Joe Palagonia, D.E. 140-1 ("JP Opp."); and Plaintiff's reply brief in further support of its motion, D.E. 141 ("Reply"). Plaintiff also relies on its Statement of Material Facts, D.E. 120-1 ("PSOMF") as well as the Declaration of Sheryl L. Reba, D.E. 132-2 ("Reba Decl.") and the attached exhibits. Defendants Chris Palagonia and 538 Junius Street Corp. rely on their Response to Plaintiff's Statement of Material Facts, D.E. 124 at 5-24 ("CP and 538 Junius RSOMF"); the Declaration of David Treyster, D.E. 139-2 ("Treyster Decl.") and the attached exhibits; and the Declaration of Chris Palagonia. Defendant Joe Palagonia relies on his Response to Plaintiff's Statement of Material Facts, D.E. 131-1 ("JP RSOMF") as well as the Declaration of Jeffrey S. Ehrlich, D.E. 140-2, and the attached exhibits.

oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Plaintiff's motion is **DENIED**.

I.   **BACKGROUND**

Plaintiff Bell Container Corp. ("Bell Container") is a New Jersey corporation that designs and manufactures corrugated packaging products, including corrugated boxes. PSOMF ¶¶ 14-15. Defendant Palagonia Bakery Co., Inc. ("Palagonia Bakery") ordered corrugated boxes from Bell Container from 2008 through September 2018. *Id.* ¶¶ 20-21. Defendant Chris Palagonia ("Chris") was the sole owner, chief executive officer, and president of Palagonia Bakery between at least 2000 and 2018. *Id.* ¶ 5. Defendant Joe Palagonia ("Joe") was employed by Palagonia Bakery as a general manager and salesman. *Id.* ¶ 7. Chris and Joe also jointly owned 538 Junius Street Corp. ("538 Junius") during at least 2018 through 2019. *Id.* ¶ 9.

A. **Payments to Bell Container**

The parties dispute the events giving rise to this litigation. According to Plaintiff, Palagonia Bakery stopped making payments for its orders in 2018 and owes Bell Container $125,822.69 for the unpaid orders. *Id.* ¶¶ 23, 38. In 2018, Joe and Bell Container allegedly reached an agreement that allowed Palagonia Bakery to place three orders for every four checks sent to Bell Container for overdue invoices. *Id.* ¶ 26. In September 2018, Joe issued four backdated checks from Palagonia Bakery to Bell Container, and Bell Container subsequently accepted and processed three orders per the agreed-upon arrangement. *Id.* ¶ 31, 33. After the orders were processed, Palagonia Bakery stopped payment on two of the checks. *Id.* ¶ 35. Chris then allegedly told Joe that he had requested that the bank stop the checks because he did not have money in the bank. *Id.* ¶¶ 39, 41, 42.

Defendants dispute that Palagonia Bakery stopped paying Bell Container. CP and 538 Junius RSOMF ¶ 23; JP RSOMF ¶ 23. Joe further disputes that he entered into an agreement on behalf of Palagonia Bakery to allow the bakery to place three orders for every four checks sent to Bell Container or that he issued four checks to Bell Container. JP RSOMF ¶¶ 26, 31, 33. Chris also denies telling Joe that he stopped the checks because he did not have money in the bank. CP and 538 Junius RSOMF ¶¶ 41-42.

### B. 538 Junius Lease

538 Junius was co-owned in equal part by Chris and Joe during 2018 through 2019. PSOMF ¶ 9. Prior to August 29, 2019, 538 Junius owned the property known as 538, 544, and 556 Junius Street in Brooklyn, New York (collectively, "538 Junius Street"). *Id.* ¶ 62. Chris additionally owned the property known as 508, 526, 530, and 536 Junius Street in Brooklyn, New York (collectively, "508 Junius Street"). *Id.* ¶ 61. Plaintiff states that Palagonia Bakery operated and/or utilized 538 Junius Street and 508 Junius Street without a written lease. *Id.* ¶¶ 63-65. Plaintiff further states that there is no evidence of rent payments from Palagonia Bakery to 538 Junius for use of the property, *id.* ¶¶ 67, and that Palagonia Bakery paid for 538 Junius' mortgages, taxes, utilities, and building upkeep, *id.* ¶¶ 80-84. Defendants Chris and 538 Junius contend that Palagonia Bakery and 538 Junius had an oral lease agreement whereby Palagonia Bakery would satisfy its rent obligations by paying for the upkeep and operating costs at 538 Junius. CP and 538 Junius RSOMF ¶¶ 64-65, 80-84.

### C. Purchase Agreement with Palagonia Distribution

On September 25, 2018, Palagonia Bakery Product Distribution, Inc. ("Palagonia Distribution") was incorporated by Gustavo Chavarria, a non-party to this action. PSOMF ¶ 105. Plaintiff states that Palagonia Bakery and Chris entered into an agreement (the "Purchase

3

Agreement") with Palagonia Distribution and Gustavo Chavarria. *Id.* ¶ 106. The facts relating to the Purchase Agreement are disputed. According to Plaintiff, under the terms of the Purchase Agreement, Palagonia Bakery agreed to sell Palagonia Distribution its bread distribution routes, a packing computer and program, and a license to use the name "Palagonia Bakery" for three years; while Palagonia Distribution and Chavarria agreed to lease 538 Junius Street and hire Chris as a consultant for three years, compensating him with 30% of Palagonia Distribution's net sales. *Id.* ¶¶ 107, 113. Chris admits that he and Palagonia Bakery entered into the Purchase Agreement, CP and 538 Junius RSOMF ¶ 106, but maintains that it was "a proposal to an agreement that was never duly executed and signed," *id.* ¶ 108. Chris also maintains that the bread routes were not for sale, and that he never received any funds as a consultant. *Id.* ¶ 107.

### D. Procedural History

On February 22, 2019, Plaintiff filed the present action against Palagonia Bakery, Palagonia Distribution, and Joe seeking judgment against Defendants for $125,822.69. D.E. 1. Plaintiff then filed an Amended Complaint adding claims against Chris, 538 Junius, and Palagonia Distribution. D.E. 72. Following Palagonia Bakery's failure to answer the Amended Complaint, the Court entered a default judgment against it for $125,822.69. D.E. 94. On August 24, 2021, Bell Container sought leave to move for summary judgment against Joe, Chris, and 538 Junius, D.E. 120, which the Court granted, D.E. 126. The present motion followed. D.E. 132.

## II. LEGAL STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Saldana v. KmartCorp.*, 260 F.3d 228, 232 (3d Cir. 2001) (the court must "view the facts in the light most favorable to the nonmoving party"). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*

*Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

**III.     ANALYSIS**

Plaintiff moves for summary judgment on its claims for fraud and aiding and abetting fraud, piercing the corporate veil, and fraudulent conveyance. The Court addresses each in turn.

**A. Fraud and Aiding and Abetting Fraud**

The Court first addresses Plaintiff's arguments for summary judgment on Counts IV and V for fraud and aiding and abetting fraud. Br. at 22-23. To prevail on a claim for common law fraud, a plaintiff must prove (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997).[2] An omission can amount to fraud if a party has a duty to disclose. *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013). Further, "allegations of fraud must be proved by clear and convincing evidence." *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998), *aff'd*, 172 F.3d 859 (3d Cir. 1998). Because Plaintiff bears the burden at the summary judgment stage to establish that there is no genuine issue of material fact for each of the elements of fraud, "summary judgment on fraud is a difficult ruling for a plaintiff to win." *Kuibyshevnefteorgsynthez v. Model*, Civ. No. 93-4919, 1995 WL 66371, at *19 (D.N.J. Feb. 6, 1995).

---

[2] The parties cite to New Jersey law. Seeing no clear reason to deviate from this assumption, the Court will also apply New Jersey law. *See Manley Toys, Ltd. v. Toys R Us, Inc.*, Civ. No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

Plaintiff has not met its burden.[3] For instance, Plaintiff argues that Chris and Joe issued checks to Bell Container knowing that Palagonia Bakery had "no money" in its bank accounts. Br. at 22. However, Joe disputes that he had any knowledge of the stopped check orders. JP RSOMF ¶¶ 40-41. According to Joe, after he learned that the checks had bounced and asked Chris about the matter, Chris responded "I don't have the money in the bank or there was a lien on the account and the state did something and the federal government did something." Deposition of Joe Palagonia, Reba Decl., Ex. 4 ("JP Dep.") at 109:11-13. But Chris disputes that he made such statements and contends that Joe misrepresented what Chris had said. CP and 538 Junius RSOMF ¶¶ 41, 43. Chris also denies ever cancelling checks that were issued to Plaintiff. *See* CP and 538 Junius Opp. at 10. Thus, there remain genuine issues of material fact as to whether Defendants had the requisite knowledge to support a fraud claim.

Further, Plaintiff states that "Joe and Chris intended Bell Container to rely upon the checks and process additional orders," but fails to support this contention with any evidence from the record. Br. at 23. Without more, this bald assertion falls short of meeting Plaintiff's burden of showing fraudulent intent at the summary judgment stage. *See Model*, 1995 WL 66371, at *19 (declining to draw an inference of fraud against the non-movant because "summary judgment on such elusive issues as fraudulent intent will be justified only on the clearest of showings"); *Worldwide Lab. Support of Illinois, Inc. v. Cura Grp., Inc.*, Civ. No. 05-1105, 2009 WL 961485,

---

[3] Plaintiff cites to *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) for the general proposition that "Defendants failed to meet their obligation to establish the existence of a genuine issue of a material fact." Reply at 2; *see also id.* at 5. However, the Third Circuit made this finding regarding a "non-moving party bearing the burden of proof." *Schoch*, 912 F.2d at 657. Here, the burden has not shifted to Defendants to show that there is a genuine dispute for trial because Plaintiff has not met its initial burden of demonstrating that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (setting forth the burden-shifting framework for summary judgment).

at *10–11 (D.N.J. Apr. 6, 2009) (finding that the defendants' intent must be determined by the trier of fact and noting that summary judgment "should ordinarily not be granted where an action…requires determination of a state of mind or intent") (internal quotation omitted).  Thus, Plaintiff's motion for summary judgment on its fraud claims is denied.

Plaintiff also argues that the Court should find that Defendants aided and abetted fraud but fails to analyze its aiding and abetting claim.  Br. at 23.  In New Jersey, the tort of aiding and abetting is comprised of the following:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation.

*Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999) (internal quotation omitted).  "A claim for aiding and abetting fraud also requires proof of the underlying tort."  *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775, 784 (App. Div. 2006).

Because Plaintiff has not sustained its burden as to fraud, the underlying wrong, summary judgment on the aiding and abetting claim is improper.  *Cf. Fed. Nat'l Mortg. Ass'n v. DuBois*, Civ. No. 15-3787, 2018 WL 5617566, at *13 (D.N.J. Oct. 30, 2018).  Moreover, Plaintiff failed to perform any analysis to support its assertion that Defendants aided and abetted fraud, thereby also not meeting its burden.  Accordingly, the Court also denies summary judgment on Plaintiff's aiding and abetting claims.

B. **Piercing the Corporate Veil**

Plaintiff also moves for summary judgment on Count VIII and asks the Court to find that Palagonia Bakery was an alter ego for Chris, Joe, and 538 Junius.[4] Br. at 14-22. As an initial matter, the parties disagree on which state's law applies to the analysis. Plaintiff applies New York law, asserting that the law of the state of formation applies. Br. at 14-21; Reply at 5. Chris, 538 Junius, and Joe apply New Jersey law without explaining the basis for their choice. CP and 538 Junius Opp. at 14; JP Opp. at 8. To determine which state's law should govern the veil-piercing inquiry, "a court applying New Jersey law[5] could either look to the target entity's state of incorporation, or conduct the flexible governmental interest analysis, where the court applies the law of the state that has the most significant connections with the parties and the transaction." *Las Vegas Sands Corp. v. Ace Gaming, LLC*, 713 F. Supp. 2d 427, 443 (D.N.J. 2010) (internal quotations omitted). Accordingly, Plaintiff's veil-piercing claim may be governed by the law of New York, where Palagonia Bakery was incorporated, or New Jersey, where Plaintiff was incorporated, has a principal place of business, and the events giving rise to the instant claim occurred. Neither party provides more than a cursory choice of law analysis. However, Plaintiff concedes that "the standards between [New York and New Jersey] are substantially similar."

---

[4] Courts may pierce the corporate veil in the parent-subsidiary context or to reach individual owners, shareholders, or corporate officers. *Trustees of the Loc. 1245 Health Fund v. Key Handling Sys., Inc.*, Civ. No. 13-2749, 2015 WL 716217, at *8 (D.N.J. Feb. 19, 2015). The Court is not aware of authority finding that the corporate veil may be pierced to reach a corporation's employees—here, Joe—or entities affiliated with the corporation's owner or shareholder—here, 538 Junius. However, as discussed further below, to the extent that the doctrine can be applied in this context, the Court finds that Plaintiff's motion still falls short. *Cf. Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 426 n.4 (D.N.J. 2019).

[5] In diversity cases, courts look to the choice-of-law rules of the forum state—here, New Jersey—to decide which body of substantive law controls. *Collins ex rel. Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017).

Reply at 5. The Court agrees. Thus, the Court will apply New Jersey law. *See Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 424 (D.N.J. 2019) (applying New Jersey law where the veil-piercing claim could be governed by the laws of Florida, Utah, or New Jersey, and New Jersey's veil-piercing framework was "substantially similar" to that of Florida and Utah); *Fagan v. Fischer*, Civ. No. 14-7013, 2019 WL 5587286, at *23 n.13 (D.N.J. Oct. 30, 2019) ("[B]ecause the parties have not addressed the matter, and New Jersey's veil-piercing framework is substantially similar to that of North Carolina and Delaware, the Court will apply New Jersey law.").

"[I]t is axiomatic that a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *Linus Holding Corp.*, 376 F. Supp. 3d at 424-25 (internal quotations omitted). However, veil piercing is an equitable tool that, in limited circumstances, allows courts to disregard corporate formalities. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001). Piercing the corporate veil is appropriate "only under extraordinary circumstances." *Portfolio Fin. Servicing Co. ex rel. Jacom Computer Servs. v. Sharemax.com, Inc.*, 334 F. Supp. 2d 620, 627 (D.N.J. 2004). In New Jersey, two elements must be shown to pierce the corporate veil and hold a shareholder personally liable for the corporation's liabilities: (1) "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist;" and (2) "the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Linus Holding Corp.*, 376 F. Supp. 3d at 425. In determining whether the first element is satisfied, courts must consider the following factors: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor

corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Id.*; *see also Pearson*, 247 F.3d at 485; *Verni ex rel. Burstein v. Harry M. Stevens, Inc.*, 903 A.2d 475, 498 (N.J. App. Div. 2006). The party seeking to pierce the corporate veil bears the burden of showing that the court should disregard the corporate entity. *Tung v. Briant Park Homes, Inc.*, 670 A.2d 1092, 1096 (N.J. App. Div. 1996).

"[A] consideration of whether to pierce the corporate veil involves complex issues of law and fact which are not readily amenable to summary judgment." *New Jersey Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs.*, Inc., 800 F.Supp. 1210, 1220 (D.N.J. 1992). As a result, courts in this district are hesitant to grant summary judgment on piercing the veil claims. *Pricaspian Dev. Corp. v. Martucci*, Civ. No. 11-1459, 2014 WL 105898, at *3 (D.N.J. Jan. 9, 2014); *see also The Mall at IV Grp. Properties, LLC v. Roberts*, Civ. No. 02-4692, 2005 WL 3338369, at *10 (D.N.J. Dec. 8, 2005) ("[I]t is recognized that the determination of whether there are sufficient grounds for piercing the corporate veil ordinarily should not be disposed of by summary judgment, in view of the complex economic questions often involved, especially if fraud is alleged.") (internal quotation omitted).

The Court first considers whether a unity of interest and ownership exists such that the separate identities of Palagonia Bakery and Chris, Joe, and 538 Junius no longer exist. As to undercapitalization, Plaintiff argues that as of the end of August 2018, when Joe issued four checks to Plaintiff, Palagonia Bakery's Bank of America checking accounts had negative balances. Br. at 19; PSOMF ¶¶ 50-51. Defendants Chris, Joe, and 538 Junius do not deny these allegations. CP and 538 Junius RSOMF ¶¶ 50-51; JP RSOMF ¶¶ 50-51. Plaintiff also contends that there was a "complete absence" of corporate formalities, as evidenced by Palagonia Bakery's failure to keep

corporate records, including corporate bylaws, organizational charts, or payment receipts. Br. at 19; PSOMF ¶¶ 131-132. Joe disputes this statement; he also points to his testimony that he has no knowledge as to what happened to Palagonia Bakery's records and believed Chris was the party responsible for saving Palagonia Bakery's documents. JP RSOMF ¶ 131, JP Dep. at 56:11-57:16. Chris and 538 Junius, however, admit that Palagonia Bakery did not keep any corporate records. CP and 538 Junius RSOMF ¶ 131. This admission and Joe's testimony regarding Chris's responsibility for Palagonia Bakery's documents support a finding that Palagonia Bakery failed to keep corporate records, although such a finding may not be applicable to Joe at the summary judgment stage.

However, other facts material to the alter ego inquiry are disputed. For instance, the parties dispute whether funds were transferred from Palagonia Bakery's bank accounts for personal rather than corporate purposes. Plaintiff contends that Chris, and possibly Joe, withdrew money from Palagonia Bakery's bank accounts, and that there is "no evidence that any of the cash withdrawn from these bank accounts was for [Palagonia] Bakery's business." Br. at 19. Joe disputes that he ever withdrew cash from Palagonia Bakery's account. JP RSOMF ¶ 94. While Chris admits that he withdrew money from Palagonia Bakery's bank accounts, he maintains that the money was for business purposes and not for personal use. CP and 538 Junius RSOMF ¶¶ 93-94. And while Plaintiff contends that there is "no evidence" that the withdrawn money was used for business purposes, Plaintiff fails to point to evidence in the record that the money was used for Chris and/or Joe's personal purposes. Further, the parties dispute the relationship between Palagonia Bakery and 538 Junius, which bears on whether Palagonia Bakery was "merely a facade for the operations of the dominant stockholder." *Pearson*, 247 F.3d at 485. Specifically, Plaintiff contends that Palagonia Bakery—which was solely owned by Chris—paid the mortgages, taxes, building

12

upkeep, utilities, and insurance for 538 Junius—a property owned by 538 Junius Street Corp., of which Chris and Joe each owned 50%. Br. at 20; PSOMF ¶¶ 75, 79-84. Chris, however, argues that Palagonia Bakery paid for 538 Junius' mortgage and expenses as part of a lease agreement. CP and 538 Junius Opp. at 9-10; CP and 538 Junius RSOMF ¶ 80; Deposition of Chris Palagonia, Reba Decl., Ex. 3 ("CP Dep.") at 32:8-21.[6] Thus, certain material facts remain in dispute, and "[i]n and of themselves, the undisputed facts are inadequate to satisfy the first prong of the veil-piercing analysis." *Roberts*, 2005 WL 3338369, at *5.

Because the Court finds that Plaintiff has not met its burden on summary judgment as to the first prong of the veil-piercing analysis, it does not reach the second prong: whether Chris, Joe,

---

[6] Chris and 538 Junius' Responsive Statement of Material Fact states that Palagonia Bakery paid for 538 Junius' mortgage and expenses as part of a lease agreement but do not cite to an agreement or any other document in the record. CP and 538 Junius RSOMF ¶ 80. In fact, Chris and 538 Junius represented that the lease agreement between Palagonia Bakery and 538 Junius was "an oral lease agreement." *Id.* ¶ 64. Consistent with this statement, Chris testified that the agreement between Palagonia Bakery and 538 Junius was not in writing. CP Dep. at 32:19-21. However, concurrently with the submission of their opposition brief, Chris and 538 Junius submitted for the first time a copy of a written lease agreement between Palagonia Bakery and 538 Junius. *See* Treyster Decl., Ex. A. The Court's judicial preferences clearly state that the Court will disregard any facts relied on in a summary judgment motion that were not included in the party's statement of facts. Additionally, the Court's October 18, 2021 Order states that the parties shall refer to Plaintiff's statement of undisputed material facts and Chris and 538 Junius' responsive statement of material facts in connection with the present motion. D.E. 126 at 3. Therefore, the Court will not consider the written lease agreement, which was neither referenced in Chris and 538 Junius' Responsive Statement of Material Fact nor submitted to the Court prior to the filing of Chris and 538 Junius' opposition brief. *See Luxama v. Ironbound Express, Inc.*, Civ. No. 11-2224, 2020 WL 3642565, at *2 (D.N.J. July 6, 2020) ("Taking the Court's judicial preferences together with the Court's two orders granting the parties leave to file, it is clear that" the plaintiff was "bound by the responsive statement of material facts that they submitted in opposition to [the defendants'] request for leave to file for summary judgment"). Further, as Plaintiff notes, discovery in this matter closed on April 30, 2021, *see* D.E. 106. Chris and 538 Junius should not be permitted to rely upon documents produced for the first time months after the close of discovery; moreover, they have not shown that Plaintiff had notice of the leases as was the case in *ARC DBPPROP001, LLC v. Easton Buffet LLC*, Civ. No. 18-1995, 2019 WL 4645133 (E.D. Pa. Sept. 24, 2019), *aff'd*, 842 F. App'x 772 (3d Cir. 2021), upon which Chris and 538 Junius rely in contending that the Court may consider the leases. *Id.* at *5 n.5.

and 538 Junius used Palagonia Bakery to perpetrate a fraud or injustice. However, the Court notes that "summary judgment on such elusive issues as fraudulent intent will be justified only on the clearest of showings," and "[a]s unlikely as any alternative explanation may be, the Court may not draw an inference of fraud against the non-movant." *Model*, 1995 WL 66371, at *19. Here, the statements of fact relied upon by Plaintiff in support of its contention that Defendants used Palagonia Bakery to commit a wrongful act are disputed. *See* Br. at 21. As such, the Court is skeptical that Plaintiff can meet its burden on summary judgment as to the second prong of the veil-piercing analysis. *See The Mall at IV Grp. Properties, LLC*, 2005 WL 3338369, at *5 ("[The p]laintiff also bears the burden of proving that defendant has perpetrated fraud or injustice, an analysis which will undoubtedly address the intent and knowledge of the parties").

In sum, summary judgment on Plaintiff's veil-piercing claim is denied. *See Roberts*, 2005 WL 3338369, at *5 ("Given these and other factual uncertainties, the Court cannot say, at the summary judgment stage, that the extraordinary remedy of piercing the corporate veil…is warranted."); *see also Portfolio Fin. Servicing Co. ex rel. Jacom Computer Servs. v. Sharemax.com, Inc.*, 334 F. Supp. 2d 620, 627 (D.N.J. 2004) (noting that in the summary judgment context, courts will only pierce the corporate veil when the "plaintiff alleges and proffers genuine and material facts from which a reasonable jury could find in plaintiff's favor and from which a conclusion could be drawn that the defendant abused its corporate structure for fraudulent, unjust or inequitable purposes").

### C. Fraudulent Conveyance

Finally, Plaintiff moves for summary judgment on Count VI for fraudulent conveyance against Chris, Joe, and 538 Junius, arguing that Palagonia Bakery "transferred its goodwill and name without consideration," and that Chris and Joe "transferred cash out of [Palagonia] Bakery

14

with actual intent to hinder, delay, or defraud Bell Container." Br. at 24-27. The New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-25 ("UFTA")[7] provides as follows:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J.S.A. 25:2-25. Accordingly, two questions must be answered when analyzing a cause of action under the UFTA: (1) "whether the debtor or person making the conveyance has put some asset beyond the reach of creditors which would have been available to them at some point in time but for the conveyance" and (2) "whether the debtor transferred property with an intent to defraud, delay, or hinder the creditor." *Gilchinsky v. Nat'l Westminster Bank N.J.*, 159 N.J. 463, 475-76 (1999) (internal quotation marks omitted). Both inquiries involve fact-specific determinations, and the party seeking to set aside the conveyance bears the burden of proving intent. *Id.* at 476.

---

[7] While the Amended Complaint does not specify the basis for Plaintiff's fraudulent conveyance claims, the parties analyze such claims pursuant to Section 25:2-25 of the UFTA; thus, the Court assumes Plaintiff's fraudulent conveyance claims are brought under this provision of the UFTA and analyzes them accordingly. *See Manley Toys, Ltd.*, 2013 WL 244737, at *2 ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp.*, 184 F.3d at 263).

To determine whether the debtor intended to defraud, delay, or hinder creditors, courts generally look for "badges of fraud," which give rise to an inference of intent. *Id.* The UFTA lists badges of fraud that courts are to consider in determining the issue of actual intent:

> a. The transfer or obligation was to an insider;
> b. The debtor retained possession or control of the property transferred after the transfer;
> c. The transfer or obligation was disclosed or concealed;
> d. Before the transfer was made or obligation was incurred, the debtor had been sued or threated with suit;
> e. The transfer was of substantially all the debtor's assets;
> f. The debtor absconded;
> g. The debtor removed or concealed assets;
> h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.J.S.A. 25:2-26. A transfer to oneself or to a business entity that one controls is a transfer to an "insider" for purposes of the statute. *Gilchinsky*, 159 N.J. at 478; *see also* N.J.S.A. 25:2-22 (defining "insider" as used in the UFTA).

Plaintiff first asserts that Palagonia Bakery "transferred its goodwill and name without consideration," Br. at 24, presumably in reference to the Purchase Agreement entered into between Palagonia Bakery, Chris, Palagonia Distribution, and Gustavo Chavarria, Br. at 10; PSOMF ¶ 113. As an initial matter, the parties dispute whether the Purchase Agreement was ever consummated. *See* CP and 538 Junius Opp. at 28; CP and 538 Junius RSOMF ¶ 108; Deposition of Gustavo Chavarria, Reba Decl., Ex. 32 ("Chavarria Depo.") at 58:18-25. Given this material factual dispute, the Court cannot grant summary judgment. Plaintiff also appears to argue that the Purchase Agreement was executed with an intent to defraud. It claims that Palagonia Bakery,

16

Chris, and Joe entered into said agreement with Palagonia Distribution "as an intentional end run" around Palagonia Bakery's debt to Plaintiff and an IRS lien on its assets. Br. at 25. To prevail on this argument, assuming that the transfer was made, Plaintiff must meet its burden of proving actual intent. *Gilchinsky*, 159 N.J. at 476. In contending that there was actual intent to defraud, Plaintiff asserts that "Chris testified that he entered into the Purchase Agreement because any payment to Bakery 'would have went to the IRS and New York State, all to pay the workers[.]" *Id.*; PSOMF ¶ 109. While Chris did testify that any sales of Palagonia Bakery's assets would have gone to the IRS, New York State, and the workers, he did not testify that he entered into the Purchase Agreement *because* of such considerations. *See* Chris Depo. at 69:9-70:19. Plaintiff also notes that rather than paying Palagonia Bakery in connection with the Purchase Agreement, Palagonia Distribution agreed to pay Chris 30% of its net sales and rent to 538 Junius Street. Br. at 26; PSOMF ¶¶ 106, 113. While this proposed arrangement—regardless of whether the terms of the Purchase Agreement were ever carried out—supports an inference of fraudulent intent, this fact alone "do[es] not foreclose a question of fact for the jury on what [Defendants'] intentions were." *City of Atl. City v. Zemurray St. Cap., LLC*, Civ. No. 14-5169, 2017 WL 6638203, at *20 (D.N.J. Dec. 29, 2017). In short, Plaintiff has not met its burden of showing no genuine dispute of material fact exists so that it is entitled to judgment as a matter of law. *See id.* (denying Plaintiff's motion for summary judgment on its fraudulent transfer claim because "[t]he wide range of possible explanations forecloses a conclusion on summary judgment of fraudulent intent under the UFTA").

Plaintiff further contends that Chris and Joe "transferred cash out of [Palagonia] Bakery with actual intent to hinder, delay, or defraud Bell Container," Br. at 24, and points to "several badges of fraud" evincing their intent to defraud. Plaintiff first notes that Chris and Joe were

17

"insiders" of Palagonia Bakery for the purposes of the UFTA, pointing to Chris's position as owner, chief executive officer, and president as well as Joe's position as general manager and salesman. *Id.* at 26; PSOMF ¶¶ 5, 7. Chris and Joe do not dispute that they held those positions. CP and 538 Junius RSOMF ¶ 5; JP RSOMF ¶ 7. However, Joe argues that he was never an "insider" of Palagonia Bakery because he was merely a "salaried employee and salesman." JP Opp. at 11. Joe's argument misconstrues the definition of "insider" under the UFTA, which includes a person in control of the debtor corporation, or a relative of a general partner, director, officer, or person in control of the debtor corporation. *See* N.J.S.A. 25:2-22. Chris constitutes an "insider" of Palagonia Bakery as an officer and ostensibly person in control of the corporation. Joe likewise constitutes an "insider" because he is a relative of Chris, an officer and person in control of Palagonia Bakery. Thus, applying the UFTA definition, it appears that both Chris and Joe were "insiders" of Palagonia Bakery.

Plaintiff next contends that Chris and/or Joe withdrew over $60,000 in cash—substantially all of Palagonia Bakery's assets—from the bakery's bank accounts for their own purposes. Br. at 26. However, as discussed above, the parties dispute these facts. Specifically, Joe denies that he ever withdrew cash from Palagonia Bakery's bank accounts, Joe RSOMF ¶ 94, and Chris denies that he ever used Palagonia Bakery's cash for personal purposes, CP and 538 Junius RSOMF ¶¶ 93-94. Finally, Plaintiff cites to the Purchase Agreement as another purported badge of fraud, but as discussed above, issues of material fact remain as to the Purchase Agreement. Br. at 26-27. Ultimately, the only undisputed badge of fraud present is that Chris and Joe were insiders of Palagonia Bakery. This alone is insufficient to sustain Plaintiff's burden of proving actual intent to defraud. Accordingly, the Court denies summary judgment on Plaintiff's fraudulent conveyance claim.

## IV.     CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is **DENIED**. An appropriate Order accompanies this Opinion.

Dated: July 5, 2022

_____
John Michael Vazquez, U.S.D.J.